COHN LIFLAND PEARLMAN
 HERRMANN & KNOPF LLP
Kelly M. Purcaro, Esq.
Alex A. Pisarevsky, Esq.
Park 80 West - Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, New Jersey 07663
Tel.: (201) 845-9600
Fax:  (201) 845-9423
kmp@njlawfirm.com
ap@njlawfirm.com
File No.: 39764-0
*Attorneys for Plaintiff*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE LAW OFFICE OF EDWARD F. MCGINTY, P.A.,<br><br>*Plaintiff,*<br><br>v.<br><br>ALLIED ROOFING COMPANY, INC., LEVEL 3 COMMUNICATIONS, LLC, ABC CORPS 1-3 and JOHN DOES 1-3 (names being fictitious and presently unknown),<br><br>*Defendants.* | Case No.:<br><br>Civil Action<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, The Law Office of Edward F. McGinty P.A. ("Plaintiff"), on behalf of itself and all others similarly situated, by and through its attorneys, Cohn Lifland Pearlman Herrmann & Knopf LLP ("Proposed Class Counsel"), alleges against defendants, Allied Roofing Company, Inc., Level 3 Communications, LLC, ABC Corps and JOHN DOES 1-3 (collectively, "Defendants"), the following:

1

## PRELIMINARY STATEMENT

1.     Plaintiff brings this class action on behalf of itself and two putative national classes (as defined herein, the "Classes"), against Defendants, alleging that Defendants' practice of sending or transmitting unsolicited advertisements to telephone facsimile machines violates the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

2.     TCPA prohibits a person or entity from using a telephone facsimile machine, computer, or other device to send unsolicited advertisements to a telephone facsimile machine, unless the sender: (i) has an established business relationship with the recipient, and (ii) obtained the facsimile machine's telephone number through either voluntary communication within the context of an established relationship or from an Internet directory, advertisement, or site through which the recipient voluntarily agreed to make its facsimile number available for public distribution.

3.     Even if the sender of an unsolicited facsimile advertisement has an established business relationship with the recipient and obtained the facsimile machine's telephone number in a fashion permissible under TCPA, the advertisement's first page must contain a clear and conspicuous notice that informs the recipient of the ability and means to avoid future unsolicited advertisements, in compliance with 47 U.S.C. § 227(b)(2)(D)(iv) and 47 C.F.R. § 64.1200(a)(4)(iii) (an "Opt-Out Notice").

4.     Plaintiff brings this class action to secure compensatory relief on behalf of individuals and entities who have received unsolicited facsimile advertisements from Defendants in violation of TCPA.

## PARTIES, JURISDICTION, AND VENUE

5.     Plaintiff is a New Jersey professional association with its principal place of business in Jersey City, New Jersey.

6.     Defendant Allied Roofing Company, Inc. ("Allied") is a domestic for profit corporation that provides roofing services, which is incorporated in the State of New Jersey and headquartered in Newark, New Jersey.

7.     Defendant, Level 3 Communications, LLC ("Level 3") is a telecommunications and Internet service provider, incorporated in the State of Delaware and headquartered in Broomfield, Colorado.

8.     John Does 1-3 and ABC Corps are additional entities or persons, apart from Level 3 and Allied, who either transmitted or sent the subject facsimile advertisements, participated in the sending/transmission of the subject facsimile advertisements, or on whose behalf the subject facsimile advertisements were sent/transmitted or whose goods or services are advertised or promoted in the unsolicited advertisements.

9.     Allied, Level 3, John Does 1-3 and ABC Corps are herein collectively referred to as "Defendants."

3

10.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

11.   Venue is proper in the District of New Jersey, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred within this district.

### FACTUAL ALLEGATIONS AS TO THE CLASS

12.   Allied is a New Jersey roofing company, providing services such as rubber single-ply roofing, thermal plastic heat coatings, repairs, and foam roofing to customers.

13.   Level 3 is a telecommunications, VoIP[1], network, and Internet service provider who offers businesses professional services such as planning, deploying, optimizing, and managing communications. Level 3 provides "[t]urnkey service[s] include[ing] design, procurement, installation, configuration, management and monitoring" of communications networks.   http://www.level3.com/en/products/managed-network-services/

14.   Level 3 also provides facilities-based local exchange telecommunications services to business for the transmission of voice, data, and other types of telecommunications.

15.   Level 3 owns and manages a number of local exchanges (herein "Exchange"), over which Defendants transmit information, in areas

---

[1] VoIP stands for "Voice Over Internet Protocol." VoIP is a technology which transmits voice and multimedia over the internet, providing real-time communications like telephone calls and facsimiles.

including but not limited to the following Wyoming areas: Casper, Cheyenne, Cody, Jackson, Laramine, Riverton, Rock Springs, and Sheridan.

16. Upon information and belief, Level 3 both transmits information over its Exchanges and allows customers to self-transmit information on Level 3 Exchanges.

17. Upon information and belief, John Does 1-3 and ABC Corps are additional entities or persons whose identity has not yet been determined, apart from Level 3 and Allied, who either transmitted the subject facsimile advertisements, participated in the sending/transmission of the subject facsimile advertisements, or on whose behalf the subject facsimile advertisements were sent/transmitted or whose goods or services are advertised or promoted in the unsolicited advertisements.

18. Plaintiff does not, and at all relevant times did not, have an established business relationship with the Defendants.

19. Plaintiff received approximately 30 unsolicited faxes, or more, from Defendants since April of 2014 until the time of the filing of this complaint.

**A.    The Roofing Facsimiles**

20. On or about June 7, 2017, Plaintiff's facsimile machine received the facsimile attached as **Exhibit "A."**

21. The subject facsimile advertises the goods, products or services of "ALLIED INDUSTRIAL ROOFING CO." ("Roofing Fax 1").

5

22.   Roofing Fax 1 was sent to Plaintiff's facsimile machine from an Exchange, 307-213-6698, managed by and registered to Level 3.

23.   On or about September 12, 2017, Plaintiff's facsimile machine received the facsimile attached as **Exhibit "B."**

24.   The subject facsimile advertises the goods, products or services of "ALLIED INDUSTRIAL ROOFING CO." ("Roofing Fax 2").

25.   Roofing Fax 2 was sent to Plaintiff's facsimile machine from an Exchange, 307-213-6701, managed by and registered to Level 3.

26.   On or about December 11, 2017, Plaintiff's facsimile machine received the facsimile attached as **Exhibit "C."**

27.   The subject facsimile advertises the goods, products or services of "ALLIED INDUSTRIAL ROOFING CO." ("Roofing Fax 3").

28.   Roofing Fax 3 was sent to Plaintiff's facsimile machine from an Exchange, 307-212-5003, managed by and registered to Level 3.

29.   On or about February 27, 2018, Plaintiff's facsimile machine received the facsimile attached as **Exhibit "D."**

30.   The subject facsimile advertises the goods, products or services of "ALLIED ROOFING Co." ("Roofing Fax 4").

31.   Roofing Fax 4 was sent to Plaintiff's facsimile machine from an Exchange, 307-212-7103, managed by and registered to Level 3.

32.   On or about March 22, 2018, Plaintiff's facsimile machine received the facsimile attached as **Exhibit "E."**

33.   The subject facsimile advertises the goods, products or services of "COMMERCIAL DISCOUNT ROOFING." ("Roofing Fax 5").

6

34.   Roofing Fax 5 was sent to Plaintiff's facsimile machine from an Exchange, 603-291-1733, which is, upon information and belief, a VoIP managed by and registered to Level 3.   Roofing Faxes 1 through 5 are referred to hereafter, collectively, as the "Roofing Faxes."

35.   In addition to the Roofing Faxes referenced above, Plaintiff's facsimile machine has received other unsolicited facsimiles advertising Allied's services from Level 3's Exchanges over the 4 years prior to the filing of this action.

36.   Upon information and belief, Defendants transmitted the Roofing Faxes not only to Plaintiff, but also to a class of similarly situated persons.

37.   That Plaintiff is not the only recipient of the Roofing Faxes is demonstrated, among other things, by the fact that the documents are not addressed to Plaintiff in particular, but rather to "ATTN: Business Owners / Maintenance Management"  or "ATT Commercial Industrial Owners."

38.   That Plaintiff is not the only recipient of the Roofing Faxes is also demonstrated, among other things, by the fact that multiple individuals and companies have posted on social media, complaint boards, and public internet pages complaining of similar junk faxes coming from these Exchanges.

**B.   The Van Buyer Facsimiles**

39.   On or about July 27, 2017, Plaintiff received the facsimile attached as **Exhibit "F."**

7

40.   The subject facsimile advertises the goods, products or services of "VAN BUYER" (the "Van Buyer Fax 1").

41.   The Van Buyer Fax 1 was sent to Plaintiff's facsimile machine from an Exchange, 307-213-6698, managed by and registered to Level 3.

42.   On or about September 19, 2017, Plaintiff received the facsimile attached as **Exhibit "G."**

43.   The subject facsimile advertises the goods, products or services of "VAN BUYER" (the "Van Buyer Fax 2").

44.   The Van Buyer Fax 2 was sent to Plaintiff's facsimile machine from an Exchange, 307-212-5001, managed by and registered to Level 3.

45.   On or about February 21, 2018, Plaintiff received the facsimile attached as **Exhibit "H."**

46.   The subject facsimile advertises the goods, products or services of "VAN BUYER" (the "Van Buyer Fax 3").

47.   The Van Buyer Fax 3 was transmitted and sent to Plaintiff's facsimile machine from an Exchange, 307-316-1375, managed by and registered to Level 3. The Van Buyer Faxes 1 through 3 are referred to, hereafter, as the "Van Buyer Faxes."

48.   The Van Buyer Faxes are identical and all state, at the bottom of the page: "To remove your fax number call," followed by a 1-866 number.

49.   The Van Buyer Faxes do not contain a clear and conspicuous Opt-Out Notice.

50.   Specifically, the Van Buyer Faxes do not provide:

- A statement that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request is unlawful;

- A domestic contact telephone and facsimile machine number for the recipient to transmit an opt-out request; and

- A separate cost-free mechanism including a Web site address or email address, for a recipient to transmit a request pursuant to such notice to the sender of the advertisement;

51. Upon information and belief, John Does 1-3 and ABC Corps are additional entities or persons whose identity has not yet been determined, apart from Level 3, who either transmitted or sent the subject facsimile advertisements, participated in the sending/transmission of the subject facsimile advertisements, or on whose behalf the subject facsimile advertisements were sent/transmitted or whose goods or services are advertised or promoted in the unsolicited advertisements.

52. In addition to the Van Buyer Faxes referenced above, Plaintiff's facsimile machine has received other unsolicited facsimiles advertising "Van Buyer's" services from Level 3's Exchanges over the 4 years prior to the filing of this action.

53. Upon information and belief, Defendants transmitted the Van Buyer Faxes not only to Plaintiff, but also to a class of similarly situated persons.

54.   That Plaintiff is not the only recipient of the Van Buyer Faxes is demonstrated, in part, by the fact that the documents are not addressed to Plaintiff.

55.   That Plaintiff is not the only recipient of the Van Buyer Faxes is also demonstrated, in part, by the fact that multiple individuals and companies have posted on social media, complaint boards, and public internet pages complaining of similar junk faxes coming from these Exchanges.

## CLASS ALLEGATIONS

56.   This action is brought and may properly proceed as a class action, pursuant to Federal Rule of Civil Procedure 23(b)(3).

57.   Plaintiff seeks certification of two Classes (the "Allied Roofing Class" and the "Van Buyer Class"), initially defined as follows:

> **Roofing Faxes Class:** All persons or entities within the United States, with whom Defendants did not have an established business relationship, whose facsimile numbers are contained in one or more of the Defendants' database(s) and who were successfully sent one or more unsolicited faxes, from April of 2014 through the present, substantially similar or identical to the Roofing Faxes attached hereto as Exhibits A - E and described in the corresponding paragraphs of this Complaint.

> **Van Buyer Faxes Class:** All persons or entities within the United States, with whom Defendants did not have an established business relationship, whose facsimile numbers are contained in one or more of the Defendants' database(s) and who were successfully sent one or more unsolicited faxes,

from April of 2014 through the present, substantially similar or identical to the Van Buyer Faxes attached hereto as Exhibits F - H and described in the corresponding paragraphs of this Complaint.

58. Excluded from the Classes are Defendants, and their officers and directors, families, legal representatives, heirs, successors or assigns, any entity in which any Defendant has a controlling interest, and any Judge assigned to this case, and their immediate families.

59. Plaintiffs reserve the right to amend or modify the class definition in connection with their motion for class certification, as a result of discovery, at trial, or as otherwise allowed by law.

60. The members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable. While the precise number of the members of the Classes has not yet been determined, Plaintiff are informed and believe that the Classes consist of thousands of similarly situated persons and/or entities and Plaintiff can obtain this information, along with the contact information for members of the classes, from Defendants' records and the records of third parties.

61. The Classes are ascertainable by virtue of, but not limited to, the following:

   a. The Classes are ascertainable, cohesive, and maintain a sufficient community of interest, since the rights of the members of the Classes were violated in a similar fashion based upon, among other things, Defendants' violations of TCPA. Further, the relief sought will be common to the Classes.

11

b. The Classes can be identified through databases maintained by Defendants, likely Level 3 or ABC Corps., in combination with affidavits from potential members of the Classes. More specifically, Defendants maintain databases that contain the following information: (1) the number of Roofing Faxes and Van Buyer Faxes successfully sent; (2) the lists of fax numbers Defendant, Level 3 and/or ABC Corps., sent faxes to since April 2014 through present; and (3) the payment by Defendants to Level 3 and/or ABC Corps. for the successful transmission of faxes.

c. Thus, the Classes can be located and notified of the pendency of this action using techniques and a form of notice customarily used in class action litigation.

62. There are questions of law and fact common to the members of the Classes. These common questions include, but are not limited to:

a. Whether the Roofing Faxes and the Van Buyer Faxes constitute advertisements;

b. Whether Defendants violated TCPA by sending or transmitting the Roofing Faxes and the Van Buyer Faxes without permission of the recipients;

c. Whether Plaintiff and other members of the Classes are entitled to statutory damages; and

d. Whether Defendants' actions were willful and knowing under TCPA and, if so, whether the Court should treble the statutory damages.

63. Plaintiff asserts claims that are typical of the claims of the members of the Classes which it seeks to represent, because all

such claims arise out of the same, or similar, facsimile advertisements sent to Plaintiff.

64.   Plaintiff will fairly and adequately represent the interests of the Classes.

65.   Plaintiff does not have any interests which are incompatible or contrary to those of the Classes.

66.   The questions of law or fact common to the members of the Classes, as detailed above, predominate over any questions affecting only individual members.

67.   A class action is superior to other available methods for the fair and efficient adjudication of the claims of Plaintiff and the putative Classes.

68.   Specifically, the Classes are too numerous for individual actions and the economic damages, statutorily required for Plaintiff and the members of the putative Classes, are too small to warrant individual actions when compared to the expense and burden of individual litigation.

69.   A class action for these claims will provide an orderly and expeditious process for the members of the Classes, and will serve to conserve judicial resources as well as the time and expenses of the members of the Classes.

70.   Plaintiff has retained competent counsel who is experienced in the prosecution of class action litigation.   The proposed Class Counsel will fairly and adequately represent the interests of the

Classes. Proposed Class Counsel has identified and investigated the potential claims in this action. Proposed Class Counsel has extensive experience in handling class actions and other complex litigation. Proposed Class Counsel has knowledge of the applicable law for this action and will commit the necessary resources to representing this Class.

## CLASS ACTION CLAIMS

### COUNT I
**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 –ROOFING FAXES)**

71. Plaintiff, on behalf of itself and those similarly situated, re-asserts and incorporates by reference each and every allegation set forth in the preceding paragraphs as though stated at length herein.

72. Plaintiff is, and at all times mentioned herein, was a "person" within the meaning of TCPA, as defined by 47 U.S.C. § 153(39).

73. Defendants are, and at all times mentioned herein, were "person(s)" within the meaning of TCPA, as defined by 47 U.S.C. § 153(39).

74. The Roofing Faxes are "unsolicited advertisements," as defined in 47 U.S.C. § 227(a)(5), in that they advertise the commercial availability or quality of property, goods, or services and were transmitted to Plaintiff without Plaintiff's prior express invitation or permission, in writing or otherwise.

75.   Defendants used a telephone facsimile machine, computer, or other devise to send the Roofing Faxes over Level 3's Exchanges to Plaintiff's facsimile machine, in violation of 47 U.S.C. § 227(b)(1)(C).

76.   Allied, ABC Corps and John Does 1-3 are "senders," as defined in 47 C.F.R. § 64.1200(f)(10), in that it/they is/are the person(s) or entities on whose behalf the Roofing Faxes were sent or whose goods or services were advertised or promoted in the Roofing Faxes.

77.   Upon information and belief, Level 3, ABC Corps, and John Does 1-3 are "facsimile broadcasters," as defined in 47 C.F.R. § 64.1200(f)(7), in that it/they transmitted the Roofing Faxes to Plaintiff's facsimile machine on behalf of another person or entity for a fee.

78.   Upon information and belief, Defendants had a high degree of involvement in, or actual notice of, the Roofing Faxes and failed to take steps to prevent such transmissions.  This is evident from, among other things, the fact that the Roofing Faxes contain no Opt-Out Notice whatsoever.

79.   At all times mentioned herein, Plaintiff did not have an established business relationship with Defendants.

80.   Plaintiff never voluntarily communicated its facsimile number to Defendants.

81.   Upon information and belief, Defendants did not obtain Plaintiff's facsimile number from a directory, advertisement, or site

on the Internet to which Plaintiff voluntarily agreed to make its facsimile number available for public distribution.

82.   The Roofing Faxes contain no Opt-Out Notice whatsoever as required by 47 U.S.C. § 227(b)(2)(D).

83.   Pursuant to 47 U.S.C. § 227(b)(3)(B), and as a result of Defendants' violations of TCPA, Plaintiff, and all similarly situated members of the Roofing Faxes Class, are statutorily entitled to damages of $500 for each violation.

**COUNT II**
**(Willful or Knowing Violations of the Telephone Consumer**
**Protection Act, 47 U.S.C. § 227 -ROOFING FAXES)**

84.   Plaintiff, on behalf of itself and those similarly situated, re-asserts and incorporates by reference each and every allegation set forth in the preceding paragraphs as though stated at length herein.

85.   Defendants' conduct, as set forth above, was, at all times mentioned herein, willful or knowing.  The willful or knowing nature of Defendants' conduct is evidenced by, among other things, the fact that the Roofing Faxes contain no Opt-Out Notice whatsoever as required by 47 U.S.C. § 227(b)(2)(D).

86.   Pursuant to 47 U.S.C. § 227(b)(3), and as a result of Defendants' willful or knowing violations of TCPA, Plaintiff, and all similarly situated members of the Roofing Faxes Class, are statutorily entitled to damages of $1,500 for each violation.

16

<u>COUNT III</u>
**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. §
227 – VAN BUYER FAXES)**

87.   Plaintiff, on behalf of itself and those similarly situated,
re-asserts and incorporates by reference each and every allegation
set forth in the preceding paragraphs as though stated at length
herein.

88.   Defendants are, and at all times mentioned herein, were
"persons" within the meaning of  TCPA, as defined by 47 U.S.C. §
153(39).

89.   The Van Buyer Faxes are "unsolicited advertisements," as
defined in 47 U.S.C. § 227(a)(5), in that they advertise the commercial
availability or quality of property, goods, or services and was
transmitted to Plaintiff without Plaintiff's prior express invitation
or permission, in writing or otherwise.

90.   Defendants used a telephone facsimile machine, computer, or
other devise to send the Van Buyer Faxes to Plaintiff's telephone
facsimile machine, in violation of 47 U.S.C. § 227(b)(1)(C).

91.   ABC Corps and John Does 1-3  are "senders," as defined in
47 C.F.R. § 64.1200(f)(10), in that it/they is/are the person or entity
on whose behalf the Van Buyer Fax was sent or whose goods or services
were advertised or promoted in the Allied Roofing Fax.

92.   Upon information and belief, Level 3, ABC Corps and John
Does 1-3 are "facsimile broadcasters," as defined in 47 C.F.R. §
64.1200(f)(7), in that it/they transmitted the Van Buyer Faxes to

17

Plaintiff's telephone facsimile machine on behalf of another person or entity for a fee.

93. Upon information and belief, Defendants had a high degree of involvement in, or actual notice of, the Van Buyer Faxes and failed to take steps to prevent such transmissions. This is evident from, among other things, the fact that the Van Buyer Faxes do not contain a clear and conspicuous Opt-Out Notice.

94. At all times mentioned herein, Plaintiff did not have an established business relationship with Defendants.

95. Plaintiff never voluntarily communicated its facsimile number to Defendants.

96. Upon information and belief, Defendants did not obtain Plaintiff's facsimile telephone number from a directory, advertisement, or site on the Internet to which Plaintiff voluntarily agreed to make its facsimile number available for public distribution.

63. The Van Buyer Faxes do not contain a clear and conspicuous Opt-Out Notice meeting the requirements of 47 U.S.C. § 227(b)(2)(D).

97. Pursuant to 47 U.S.C. § 227(b)(3)(B), and as a result of Defendants' violations of TCPA, Plaintiff, and all similarly situated members of the Van Buyer Class, are statutorily entitled to damages of $500 for each violation.

## COUNT IV
### (Willful or Knowing Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 – VAN BUYER FAXES)

98. Plaintiff, on behalf of itself and those similarly situated, re-asserts and incorporates by reference each and every allegation set forth in the preceding paragraphs as though stated at length herein.

99. Defendants' conduct, as set forth above, was, at all times mentioned herein, willful or knowing. The willful or knowing nature of Defendants' conduct is evidenced by, among other things, the fact that the Van Buyer Faxes do not contain a clear and conspicuous Opt-Out Notice meeting the requirements of 47 U.S.C. § 227(b)(2)(D).

100. Pursuant to 47 U.S.C. § 227(b)(3), and as a result of Defendants' willful or knowing violations of TCPA, Plaintiff, and all similarly situated members of the Van Buyer Faxes Class, are statutorily entitled to damages of $1,500 for each violation.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff on behalf of itself and all others similarly situated, demands judgment against Defendants, as follows:

### AS TO THE CLASS CLAIMS

a. Certifying this matter as a class action for money damages pursuant to Federal Rule of Civil Procedure 23(b)(3);

b. Appointing Plaintiff as Class Representative of the Roofing Faxes Class and the Van Buyer Faxes Class;

c. Appointing Plaintiff's attorneys, the Proposed Class Counsel, as Class Counsel of the Roofing Faxes Class and the Van Buyer Faxes Class;

    d.    Awarding Plaintiff and the Class members the maximum civil penalties under TCPA, pursuant to 47 U.S.C. § 227(b)(3);

    e.    Pre-judgment and post-judgment interest; and

    f.    Such other relief as the Court deems equitable and just.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: April 11, 2018

Respectfully Submitted,

s/ Kelly M. Purcaro

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
Kelly M. Purcaro
Park 80 West - Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, New Jersey 07663
Tel.: (201) 845-9600
Fax:  (201) 845-9423
kmp@njlawfirm.com

### CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that to the best of my knowledge, the matter in controversy is currently not the subject of any other action pending in this court.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on this 11th day of April, 2018.

s/Kelly M. Purcaro

KELLY M. PURCARO

**CERTIFICATION PURSUANT TO L. CIV. R. 201.1**

Kelly M. Purcaro, of full age, certifies that pursuant to L. Civ. R. 201.1 the within matter is not arbitrable, being that the Complaint seeks damages that are in an excess of $150,000.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on this 11th day of April, 2018.

_s/Kelly M. Purcaro_
KELLY M. PURCARO

# EXHIBIT  A



# ATTN: *Business Owners / Maintenance Management*

- TPO Thermal Plastic Heat Weld
- Rubber Single-Ply Roof
- SBS Modified Roofing System
- Modified Bitumen-Torchdown
- Built Up Roofing - Hot Tar & Gravel

- Coatings & Repairs
- Foam Roofing
- Emergency Services
- Hydro-Stop™ Liquid
- Standing Seam Metal
- Leak Repairs
- 24 hr Emergency Service

- Family Owned & Operated
- Wholesale Pricing
- Quality Workmanship
- All Work Guaranteed
- References Available
- Fast Free Estimates
- No Job To Big Or Small







# ASK ABOUT OUR SPRING SPECIAL

## CALL THE ROOFING PROFESSIONALS FOR A FREE ROOF ESTIMATE



# 1-888-649-8882



# WE'VE GOT YOU COVERED

*Call The Roofing Company Who Can Help...*

# EXHIBIT B



## ATTN: *Business Owners / Maintenance Management*

- TPO Thermal Plastic Heat Weld
- Rubber Single-Ply Roof
- SBS Modified Roofing System
- Modified Bitumen-Torchdown
- Built Up Roofing · Hot Tar & Gravel

- Coatings & Repairs
- Foam Roofing
- Emergency Services
- Hydro-Stop™ Liquid
- Standing Seam Metal
- Leak Repairs
- 24 hr Emergency Service

- Family Owned & Operated
- Wholesale Pricing
- Quality Workmanship
- All Work Guaranteed
- References Available
- Fast Free Estimates
- No Job To Big Or Small







# ASK ABOUT OUR
# SPRING SPECIAL

## CALL THE ROOFING PROFESSIONALS FOR A FREE ROOF ESTIMATE



# 1-888-649-8882



## WE'VE GOT YOU COVERED

*Call The Roofing Company Who Can Help...*

# EXHIBIT C



# ATTN: Business Owners / Maintenance Management

- TPO Thermal Plastic Heat Weld
- Rubber Single-Ply Roof
- SBS Modified Roofing System
- Modified Bitumen-Torchdown
- Built Up Roofing - Hot Tar & Gravel

- Coatings & Repairs
- Foam Roofing
- Emergency Services
- Hydro-Stop™ Liquid
- Standing Seam Metal
- Leak Repairs
- 24 hr Emergency Service

- Family Owned & Operated
- Wholesale Pricing
- Quality Workmanship
- All Work Guaranteed
- References Available
- Fast Free Estimates
- No Job To Big Or Small

  



# ASK ABOUT OUR SPRING SPECIAL

## CALL THE ROOFING PROFESSIONALS FOR A FREE ROOF ESTIMATE

 **1-888-649-8882** 

## WE'VE GOT YOU COVERED

*Call The Roofing Company Who Can Help...*

If you have received this in error, please call 1-888-845-2761

# EXHIBIT D



# ALLIED ROOFING CO.

## CALL : 1-888-649-8882





ASBESTOS FREE

ATT COMMERCIAL INDUSTRIAL OWNERS

EMERGENCY SERVICES

# FLAT ROOF SPECIALIST

**New Roofs**
**Re-Roofing**
**Shingles**

**EPDM**
**Paper Roofs**
**And Repairs**

We are offering Rubber roof system for entire roof and flashing

99 cents per square foot with 10 year warranty

## Karnak SBS #298 Coating
## WILL SAVE 50% OFF NEW ROOF

### Brand of Materials Used:

Firestone
Polyglass

GAF

Certain Teed
Karnak

**Free Roof Estimates All work Guaranteed**
**Fully Insured**

# EXHIBIT E

# Commercial discount roofing

## *ATTN: Business Owners / Maintenance Management*

- TPO Thermal Plastic Heat Weld
- Rubber Single-Ply Roof
- SBS Modified Roofing System
- Modified Bitumen-Torchdown
- Built Up Roofing - Hot Tar & Gravel

- Coatings & Repairs
- Foam Roofing
- Emergency Services
- Hydro-Stop™ Liquid
- Standing Seam Metal
- Leak Repairs
- 24 hr Emergency Service

- Family Owned & Operated
- Wholesale Pricing
- Quality Workmanship
- All Work Guaranteed
- References Available
- Fast Free Estimates
- No Job To Big Or Small

  



## CALL THE ROOFING PROFESSIONALS FOR A FREE ROOF ESTIMATE



# 888-412-2999



## WE'VE GOT YOU COVERED

*Call The Roofing Company Who Can Help...*

**EXHIBIT F**

27-Jul-2017  14:29      <13072136698>                                                              p.1

# VAN BUYER

We buy all types of vehicles
-Company & Individuals-
In running Condition



All Fleet Vehicles / Cars / Cargo Vans / Passenger Vans / Sprinters /

# WE PAY CASH & PICK UP!

Utility Trucks / Semi Trailers

Call Us Today!

(201) 315-0087

To remove your fax number call 1 (866) 246-2888

# EXHIBIT G

# VAN BUYER

We buy all types of vehicles
-Company & Individuals-
In running Condition



All Fleet Vehicles / Cars / Cargo Vans / Passenger Vans / Sprinters /

# WE PAY CASH & PICK UP!

## Utility Trucks / Semi Trailers

## Call Us Today!

# (201) 315-0087

To remove your fax number call 1 (866) 246-2888

# EXHIBIT H

# VAN BUYER

We buy all types of vehicles
-Company & Individuals-
In running Condition



All Fleet Vehicles / Cars / Cargo Vans / Passenger Vans / Sprinters /

# WE PAY CASH & PICK UP!

Utility Trucks

Call Us Today!

## (201) 315-0087

To remove your fax number call 1 (866) 246-2888